IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**VINCENT FRANK SWAD**                                                **PLAINTIFF**

**V.**                        **NO. 4:18CV00255 BSM/PSH**

**SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Vincent Frank Swad, applied for disability benefits on August 26, 2014, alleging a disability onset date of May 1, 2013.[1] (Tr. at 30). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Swad's claim. (Tr. at 40-41). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Swad has requested judicial review.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Mr. Swad had not engaged in substantial gainful activity during the

---

[1] The relevant time-period was May 1, 2013 through December 31, 2013, which is the date last insured. (Tr. at 30).

period from the alleged onset date through the date last insured of December 31, 2013. (Tr. at 32). At Step Two of the sequential five-step analysis, the ALJ found that Mr. Swad had the following severe impairments: plantar fasciitis, carpal tunnel syndrome, left ankle fracture status post open reduction internal fixation, osteoarthritis of the spine, peripheral neuropathy, restless legs syndrome, Dupuytren's contracture, mood disorder, and bipolar disorder. (Tr. at 33).

The ALJ found that Mr. Swad's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Mr. Swad had the residual functional capacity ("RFC") to perform work at the light level, with some limitations. *Id*. He must be able to use a cane as needed to move to and from the workstation; he is limited to no balancing or climbing of ladders, ropes, or scaffolds; he could perform no more than frequent handling and could not perform foot control operations; he must not be exposed to unprotected heights or hazards in the workplace; and he would be limited to simple, routine, repetitive tasks with simple, direct, and concrete supervision (unskilled work). (Tr. at 35).

The ALJ next found that Mr. Swad was unable to perform any past relevant work. (Tr. at 38). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Swad's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, such as office helper and sales attendant. (Tr. at 40). Therefore, the ALJ found that Mr. Swad was not disabled. *Id*.

### III. **Discussion**:

   A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.

*Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Mr. Swad's Arguments on Appeal

Mr. Swad contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the RFC did not account for moderate limitations in social functioning, the ALJ should have given more weight to the opinion of Swad's PCP, and the ALJ's Step Five decision is flawed. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

While Mr. Swad's attorney makes several technical arguments, the bottom line is that the medical evidence of record does not support a finding of disability, especially within the relevant time-period of May 1, 2013 through December 31, 2013. Mr. Swad focuses his argument on his

3

mental impairments and problems from an ankle fracture.

A consultative psychiatric examination was conducted in June 2011. (Tr. at 379-383). The examiner found that Mr. Swad was capable of performing activities of daily living. *Id.* Indeed, Mr. Swad and his wife said he could do things like prepare simple meals, shop in stores, do basic chores, care for himself, and go to church. (Tr. at 60-63, 267-281). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The psychiatric examiner also found Mr. Swad to be cooperative and pleasant, with logical, relevant, and goal-directed conversation. (Tr. at 382). He was of average intelligence. *Id.* The examiner concluded that Mr. Swad's mental conditions were not so severe as to interfere with performance of basic work activities. *Id*.

Before the relevant time-period, in July 2012, Mr. Swad was hospitalized at the Bridgeway psychiatric facility for 8 days. (Tr. at 340). He improved during his stay; he was able to participate in his treatment plan and express his needs. *Id*. He was discharged in good condition. *Id*. Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

Mr. Swad did not present for treatment for mental health problems at all during the relevant time-period. A failure to treat an alleged impairment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) When he did see his PCP, Dr. Jeff Carfagno (after the relevant time-period), Mr. Swad had fair insight and judgment, was cooperative upon examination, and had good mood and eye contact. (Tr. at 370-375, 397-400). He admitted that Lyrica and Gabapentin were helpful, and he said that his condition improved when he abstained from drinking (he had a history of alcohol abuse). (Tr. at 58-59, 370, 375). Impairments

4

that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). At a visit with Dr. Carfagno in October 2014, Mr. Swad had no overt psychopathology. (Tr. at 400).

Mr. Swad did not seek counseling or care from a mental health provider. This was in spite of Dr. Carfagno telling him he needed to see a psychiatrist. (Tr. at 371). He did not regularly see Dr. Carfagno for mental health complaints. He waited months between appointments, even when Dr. Carfagno urged him to return more frequently. (Tr. at 370-371, 392). Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). However, Dr. Carfagno opined in a medical source statement (dated over two years after the relevant time-period) that Mr. Swad would not be able to work due to bipolar disorder; Dr. Carfagno said he could not get along with others or show up for work. (Tr. at 420). But Mr. Swad's mental status exams were often normal, and he did not seek formal treatment. And his wife said he had never been fired for not getting along with others. (Tr. at 281). Moreover, Dr. Carfagno admitted that he based his opinion on a record with "no formal testing." (Tr. at 416). And Dr. Carfagno added that Mr. Swad was prone to alcohol use, which he admitted compounded his problems. *Id*. The ALJ gave Dr. Carfagno's opinion little weight. It was inconsistent with the record as a whole, and it was simply a checkbox form with no citation to the medical record. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). It was properly discounted.

Still, the ALJ found moderate limitations based on mental health symptoms. Mr. Swad argues that these moderate limitations should have translated to a more limited mental RFC. However, the findings of moderate limitations at the Step Three's Psychiatric Review Technique

5

("PRT") do not directly correlate to an RFC finding, as the ALJ properly pointed out. (Tr. at 34). And the ALJ is not required to included moderate PRT criteria in the RFC. *See Jimison v Colvin*, 513 Fed. Appx. 789, 793 (10th Cir. 2013)(mental PRT limitations are not an RFC assessment, but are used only to rate mental impairment at Steps Two and Three). Finally, the ALJ *did* impose a limitation to unskilled work, with simple tasks and simple supervision. These limitations properly incorporated any mental symptoms, which admittedly were few and far between, and certainly did not rise to the level of disabling.

As for Mr. Swad's ankle problems, the record likewise does not correlate to a finding of disability. He broke his left ankle on December 31, 2013, the very last day of the relevant time-period. He had surgery and by January 13, 2014, swelling was down and the wound looked good. (Tr. at 367). Mr. Swad's doctor instructed him to bear weight as tolerated. *Id*. On February 5, 2014, Mr. Swad's doctor told him to work on range of motion and walk on the ankle. (Tr. at 366). And later that month, the ankle was showing improvement. (Tr. at 365). Mr. Swad said that Lyrica helped with pain, and he did not require any aggressive treatment like injections or pain management. His broken ankle was an acute injury, which healed, and which occurred on the last day of the relevant time-period. And the ALJ properly accounted for the ankle injury in the RFC, allowing the use of a cane, and limiting Mr. Swad to no balancing or climbing, and no lower extremity foot operations. (Tr. at 35). This RFC accounted for Mr. Swad's ankle pain, which improved over time.[2]

Finally, Mr. Swad argues that the ALJ did not clearly explain what a limitation of no

---

[2] The RFC for physical work was more limited than the RFC assigned by the two state-agency doctors, who suggested Mr. Swad could perform medium work. (Tr. at 93, 106). Clearly, the ALJ gave some credit to Mr. Swad's subjective complaints, including his complaints of neuropathy, which did not require aggressive treatment.

balancing meant in the RFC. He wondered how he could perform light work if he could not balance. But as the Commissioner points out, the VE is the expert on DOT descriptions and occupational base, not the claimant or his attorney. VE testimony based on a properly phrased hypothetical is evidence upon which the ALJ can rely. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). If there is any conflict in the DOT or the VE testimony, the ALJ must inquire as to that conflict. The ALJ in this case accounted for balance problems by including the use of a cane in the RFC, and then he asked the VE to clarify the DOT regulations on the use of a cane. (Tr. at 78-80). The VE testified that the use of a cane for balance would not preclude work, based on his 30 years of experience and observation of the jobs throughout his career. *Id*. The hypothetical properly incorporated the RFC, the VE gave sufficient testimony, and there was no unresolved conflict at Step Five.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Mr. Swad was not disabled. The RFC incorporated all of Mr. Swad's limitations, the ALJ properly discounted Dr. Carfagno's opinion, and there was no error at Step Five. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 14th day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE